BENJAMIN D. HARGROVE
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
E-mail:  Benjamin.Hargrove@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. HOSSEIN CRISTIANO LUIGI BORHAN, Defendant. | CR 22-153-BLG-SPW<br><br>UNITED STATES' SENTENCING MEMORANDUM |
|---|---|

The defendant, Hossein Borhan, was a Colstrip Police Officer, a close family friend and mentor of Jane Doe, who used his position of trust to convince her to self-produce child pornography for him.  The seriousness of his conduct cannot be overstated, and he should be sentenced accordingly.

1

Borhan was charged by Information with receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (Doc. 1.) This offense carries a 5-year mandatory minimum sentence. *Id*. He signed an agreement with the United States and pled guilty to the charged offense. (Doc. 11.) The Presentence Investigation Report (PSR) calculated an advisory guideline range of 135-168 months imprisonment for Borhan based on a criminal history category of I and a total offense level of 33. PSR ¶ 95. The United States believes that a sentence of 144 months followed by ten years of supervised release is an appropriate sentence in this case that holds Borhan accountable for his actions and protects the public.

## THE OFFENSE

Borhan—a Senior Patrol Officer who had spent 10 years in the Colstrip Police Department—met Jane Doe's family in his professional capacity as a police officer, quickly ingratiating himself with the family. PSR ¶ 18. They trusted him enough to list him as Jane Doe's emergency contact. *Id*. Soon thereafter, when Jane Doe was 16 years old, Borhan began communicating with her privately on Facebook Messenger. *Id*. In these early messages, Borhan discussed sexual topics with Jane Doe, including inquiries about her sexual experience and tips for how she could use a banana to practice giving "blow jobs." PSR ¶¶ 18, 22. Jane Doe's parents were upset when they discovered these messages and confronted Borhan about it, but ultimately allowed him to continue communicating with Jane Doe,

2

believing that the messages had been a miscommunication based on Borhan's attempts to serve as her "therapist." PSR ¶ 22.

In June 2021, the sexual nature of their communication accelerated when Borhan began communicating with Jane Doe on Snapchat. PSR ¶ 29. As detailed in paragraphs 29 through 32 of the PSR, Borhan sustained an explicit messaging relationship with Jane Doe for nearly a year, until the spring of 2022 when she reported it to law enforcement. During this time, Borhan directed Jane Doe to produce and send him hundreds of sexually explicit images and videos of herself. PSR ¶ 19. Borhan was clear that his intentions were not only to solicit sexually explicit material, however. On numerous occasions, Borhan expressed his desire to have oral and anal sex with the teenager. *See* PSR ¶¶ 30-31 (Borhan using phrases such as "I want to . . ." and "I am going to . . ." in reference to explicit sex acts with Jane Doe).

Jane Doe came forward, bringing Borhan's exploitive conduct into the light on May 13, 2022. PSR ¶ 13. Borhan admitted what he had done as well as his knowledge of Jane Doe's age. PSR ¶ 19. A federal search warrant of his phone revealed thousands of messages and several photographs of Jane Doe, including an image depicting sexually explicit conduct. PSR ¶ 26.

## SENTENCING HEARING

Sentencing is scheduled in this case for June 14, 2023. (Doc. 16.) There are no outstanding objections to the PSR by either party. *See* PSR Addendum. The United States does not anticipate calling any witnesses at the hearing, although there may be victims in attendance who wish to speak.

## SENTENCING ARGUMENT

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forth additional considerations for the Court when imposing an appropriate sentence. "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences

4

available" should be considered. 18 U.S.C. § 3553(a)(1),(3).  The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities."  18 U.S.C. § 3553(a)(4)-(6).  Finally, the Court should consider "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).

   Here, the United States respectfully recommends a sentence of 144 months, which is below the mid-point of Borhan's guideline range, with ten years of supervised release to follow. Borhan's history and characteristics inform this sentence. He is 49 years old and has practically no criminal history. He is also a father, a husband, a combat veteran, and police officer who was vested with a responsibility to serve the people of Colstrip for the last 10 years. And yet it was this position of public service he used to his own corrupt advantage—to gain trust of a family and the friendship of a teenage girl, who he abused and exploited.

   Receipt of child pornography is a serious offense that causes grave harm to the children depicted in the images. The harm is worsened when the Internet and social media applications like Snapchat are used to facilitate the receipt and distribution of these images because it is impossible for the victim and law enforcement to know with certainty whether and to what extent the images were saved and/or disseminated. Once an image is saved or sent, it can exist in perpetuity—allowing the victim to be re-abused each time her images are viewed.

Years ago, the Supreme Court in *New York v. Ferber*, 458 U.S. 747, 758 (1982) underscored the harm child pornography can cause. It noted that "the use of children as subject in pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id*. Continuing, it explained how such materials are a "permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id*.

Here, as Jane Doe vividly expressed in this case: "[Borhan] made me feel as if the only way to get away from him was suicide. . . . He made me feel no longer safe in my hometown or home. I feel like anywhere I go he will be there." PSR ¶ 33. She also described the ongoing nightmares and anxiety attacks she suffers because of Borhan's actions toward her. *Id*.

The harm caused by the defendant's conduct is difficult to overstate. He carried on a secret relationship with a teenage girl for close to a year under the guise of being her mentor, counselor, and therapist. And he continued discussing sexual topics with Jane Doe long after her parents confronted him and told him to stop. Borhan's true intentions were clear: he was not mentoring Jane Doe, he was grooming her for his control and sexual gratification. He knew she was interested in joining the military and becoming a police officer and so, he held himself out as someone who could give advice and help her achieve those goals. PSR ¶ 40. Most concerning to the United States is how he used his position as a police officer to

6

befriend Jane Doe, to take her on ride-alongs in his police car, and ultimately to garner her trust. He then exploited that trust by directing her to film herself engaging in specific sex acts, by sending her nude images of himself, and by carrying on graphic and explicit conversations with her for 10 months. This behavior is consistent with his psychosexual evaluation, which found his personality type tends to "manipulate people to receive attention and approval" and is "prone to take advantage of others." Psych. Eval. 11.

    Borhan's conduct strongly supports a significant sentence based on the need to deter future conduct and protect the public.  First, the defendant did not make a one-time or even short-term mistake by pursuing Jane Doe. He methodically groomed her and pushed the relationship further and further into sexual topics and solicited hundreds of images from her. Second, when confronted by her parents after his sexual communications with her began, Borhan convinced them it was a misunderstanding. He could have taken the warning and stopped before ever soliciting child pornography from Jane Doe, but he chose not to. In fact, he doubled down on the secrecy by moving the conversation to Snapchat, which automatically deleted most of the images.

    An important fact for the Court to consider is the clear intention Borhan expressed to Jane Doe of his desire to physically have sex with her. His risk of hands-on offending or other types of sexual recidivism is reflected in the

7

psychosexual evaluation's finding that he is an above average risk for reoffending. Psych. Eval. 13. A sentence near the middle of his guideline range will protect the public and allow Borhan sufficient time to receive the rehabilitation and treatment he needs to address his addictive personality and mental health issues.

Lastly, a significant sentence serves to deter future crime by communicating to the public that members of law enforcement are held to a necessarily high standard and thereby punished harshly when they use that position of trust to abuse those they swore to protect.

Therefore, the United States recommends a sentence of 144 months followed by ten years of supervised release.

DATED this 31st day of May, 2023.

JESSE A. LASLOVICH
United States Attorney

*/s/ Benjamin D. Hargrove*
BENJAMIN D. HARGROVE
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE
L.R. 5.2(b)

\* \* \*

I hereby certify that on May 31, 2023, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk, U.S. District Court

2. Cammi J. Woodward and Vernon E. Woodward
   Attorneys for Defendant


/s/ *Benjamin D. Hargrove*
BENJAMIN D. HARGROVE
Assistant U.S. Attorney